**In re WESTMINSTER ASSOCIATES, LTD., Debtor.**

**Westminster Associates, Ltd., Plaintiff,**

**v.**

**Orkin Exterminating Company, Inc., Defendant.**

**Bankruptcy No. 98–5116–3P1.
Adversary No. 00–134.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 3, 2001.

Richard R. Thames, Jacksonville, FL, W. Jefferson Leath, Charleston, SC, for plaintiff.

John B. Macdonald, Jacksonville, FL, R. Wade Marionneaux, Atlanta, GA, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon Defendant's Motion to Exclude a Portion of the Testimony of Plaintiff's expert, Harry Bowyer ("Bowyer"), pursuant to Fed.R.Evid. 702 and the decisions of the United States Supreme Court in the cases commonly referred to as the *"Daubert*

Trilogy."[1] The issue in this case is whether Defendant is liable to Plaintiff for the cost of termite damage at Plaintiff's apartment complex, and if so, the cost to repair the damage. Plaintiff seeks to exclude Bowyer's testimony concerning the cost to repair termite damage at Plaintiff's complex. Upon the briefs of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Bowyer is vice-president of Southeastern Construction Inspection Services, Inc. ("Southeastern"). (Tr. at 336.) His position entails reviewing applications for construction work before disbursing payment to general contractors.

2. Bowyer was initially hired by Plaintiff to analyze excessive water consumption at Plaintiff's facility. (Tr. at 337.) Thereafter, Bowyer was asked to analyze repair work on some stairs. (Tr. at 338.) Bowyer was eventually asked to manage the work performed by the general contractor at Plaintiff's apartment complex. (Tr. at 338.)

3. Plaintiff presented Bowyer as an expert in construction management and construction costing. (Tr. at 337.)

4. Relying on façade drawings and field reports prepared by Dr. Maxcy Nolan, Plaintiff's expert entomologist, Bowyer prepared the Revised Termite Cost Summary Report, a calculation of the cost to repair termite damage at Plaintiff's complex.[2] The Revised Termite Cost Sum-

mary Report was admitted into evidence as Plaintiff's Exhibit 17. Bowyer concedes he is not a termite expert and does not have any training in identifying or distinguishing damage caused by wood destroying fungi, dry wood termites, carpenter ants, or wood destroying beetles. (Tr. at 352, 367.) Bowyer testified that he did not make any independent judgment as to what kind of damage was repaired. (Tr. at 368–369.)

5. Bowyer determined the cost to repair termite damaged wood at Plaintiff's complex by calculating the total cost of wood repair at each building and subtracting out the cost of repairing damage caused by wood-destroying fungi which was depicted in blue on Dr. Nolan's façade drawings (the "Subtraction Method").

6. Dr. Nolan's façade drawings code active termite damage as orange, inactive termite damage as green, and carpenter ant damage as yellow and black. (Tr. at 251, 422.) Bowyer only subtracted out costs to repair wood coded in blue.

## CONCLUSIONS OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and is made applicable to adversary proceedings in bankruptcy pursuant to Fed.R.Bankr.P. 9017.

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

1. The *Daubert* Trilogy consists of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

2. Bowyer's initial Termite Cost Summary Report attempted to differentiate between ter-

mite damage and damage caused by other organisms. (Tr. at 414.) However, during Bowyer's deposition, it was discovered that Bowyer's Termite Cost Summary Report was not entirely consistent with the conclusions of Dr. Nolan. To eliminate the appearance of judgment on his part, Bowyer revised his Cost Summary Report after consulting with Dr. Nolan.

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702.

■ In *Daubert*, the Supreme Court imposed a gate-keeping requirement on trial judges, who must ensure that scientific evidence is both reliable and relevant before it is admitted. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786, 125 L.Ed.2d 469). Expert testimony is admissible when: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or other specialized expertise, to understand the evidence or to determine a fact in issue. *McGhan Med. Corp.*, 184 F.3d at 1309 (citing *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), *reh'g denied* 172 F.3d 884 (11th Cir.1999)).

Although *Daubert* noted that a court must focus on principles and methodology rather than the conclusions they generate, the Court subsequently recognized that the two are not entirely distinct from one another. *Joiner*, 522 U.S. at 146, 118 S.Ct. 512, 139 L.Ed.2d 508. "Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* at 146, 118 S.Ct. 512.

■ The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). Although *Daubert* dealt with scientific testimony, its gatekeeping obligation applies to all expert testimony. *Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167 (1999).

■ Although *Daubert* set forth several factors a court should consider when deciding whether to admit scientific testimony, the Rule 702 inquiry is a flexible one and the Daubert factors do not constitute a definitive checklist. *Kumho Tire*, 526 U.S. at 149, 119 S.Ct. 1167 (quoting *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786). "[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert of by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue." *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167. The advisory committee note to Rule 702 also provides

Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's

field, and the expert must explain how the conclusion is so grounded.

Fed.R.Evid. 702 advisory committee's note.

█ Defendant argues that Bowyer's Subtraction Method is not well-grounded, not well-reasoned, and not sufficiently reliable and should therefore be excluded pursuant to Fed.R.Evid. 702 and the *Daubert* trilogy. Defendant argues that the method is prone to error and overstates the cost to repair termite damage. Defendant asserts that Bowyer should have added up the cost to repair termite damage rather than subtracting the non-termite damage. Defendant points to the following five examples in support of its argument that Bowyer's methodology is unreliable: (1) Bowyer failed to subtract the cost to repair wood damage caused by carpenter ants and wood destroying beetles; (2) Bowyer failed to subtract the cost to repair all wood damage caused by wood destroying fungi; (3) Bowyer failed to subtract the cost to repair wood damage caused by both termites and wood destroying fungi; (4) Bowyer attributed approximately $41,000 in damages to the Clubhouse to Defendant despite Dr. Nolan's testimony that the Clubhouse suffered no termite damage; and (5) Bowyer amended his Termite Cost Summary Report to remove the cost of 160 window and door units he originally believed had been surrounded by termite damaged wood but failed to subtract the cost of the corresponding wood and the interior dry wall.

### DAMAGE CAUSED BY CARPENTER ANTS AND WOOD DESTROYING BEETLES

Defendant asserts that Bowyer's failure to subtract "fairly extensive" damage caused by carpenter ants in at least two buildings at the complex as well as damage caused by wood-destroying beetles evidences the unreliability of his Subtraction Method. A thorough review of Dr. Nolan's Termite Inspection Reports (Pl.'s Ex. 26) and façade drawings indicates that carpenter ants were present in Buildings 1 and 14. Dr. Nolan coded carpenter ant damage in Building 1 in black and carpenter ant damage in Building 14 in yellow. Consequently, Bowyer's admission that he only subtracted areas denoted in blue in Dr. Nolan's façade drawings does call into question the reliability of the Subtraction Method, at least with respect to carpenter ant damage. Nonetheless, the Court finds that Bowyer's failure to subtract carpenter ant damage does not render his testimony unreliable. Additionally, although Dr. Nolan testified that he found wood-destroying beetle damage at the complex, none of his Termite Inspection Reports or façade drawings reflect such damage.

### DAMAGE CAUSED BY WOOD DESTROYING FUNGI

Defendant contends that Bowyer's Subtraction Method is not reliable because it does not deduct all of the areas of damage caused by wood-destroying fungi. Defendant points out that in his façade drawings, Dr. Nolan may not have properly coded all areas where wood-destroying fungi were found and did not code areas of mixed damage, damage caused by both termites and wood-destroying fungi, as being fungi damaged. Defendant contends that Dr. Nolan's failure to properly code in his façade drawings all areas where wood-destroying fungi were found and Bowyer's consequent failure to subtract such costs, impugns the reliability of Bowyer's Subtraction Method. Defendant's argument is without merit. Bowyer testified that he is not qualified to determine whether damage was termite related and therefore relied on Dr. Nolan's drawings. Bowyer's failure to subtract wood-destroying fungi damage in reliance on Dr. Nolan's drawings is due to inaccuracies in Dr. Nolan's drawings, not Bowyer's Subtraction Method. Defendant

touts the "simple expedient" of adding up termite related damage. However, Defendant's proposal presumes Dr. Nolan's coding of termite related damage to be mistake free, that is that he did not code areas of damage as termite related when they are in fact not attributable to termites. Otherwise, use of the "Addition Method" would result in erroneous charges to Defendant. With respect to the mixed areas of damage, the use of an alternate methodology, such as the Addition Method, would not have produced a different figure because it would still be based on Dr. Nolan's coding. Bowyer testified that he only subtracted out those areas coded in blue which represent fungi related damage. On his drawings, Dr. Nolan coded areas of inactive termite damage in green even if there was fungi related damage.[3] Because Bowyer relied on Dr. Nolan and his drawings to determine whether damage was termite related, use of the Addition Method would not change Bowyer's inclusion of mixed damage as a cost attributable to Defendant. The Court finds that Bowyer's failure to deduct all of the costs associated with wood-destroying fungi does not render his Subtraction Method unreliable.

### DAMAGE TO THE CLUBHOUSE

Defendant points out that Bowyer attributed approximately $41,000 in damages to the Clubhouse to Defendant despite Dr. Nolan's testimony that the Clubhouse suffered no termite damage. Although Dr. Nolan testified there was no termite damage to the Clubhouse, his field report and façade drawings indicate there was termite damage to the Clubhouse. (Pl.'s Ex. 26.) Defendant's actual, albeit, unstated complaint as to Bowyer's testimony as it relates to the Clubhouse is whether damages incurred as a result of Plaintiff's costs to determine whether termites were present, where it was subsequently determined that they were not, are attributable to Defendant. Although the Court recognizes the issue and will ultimately make a determination as to what costs, if any, for which Defendant is liable, the Court is not persuaded that Bowyer's attribution of such costs to Defendant undermines the reliability of his methodology.

### DAMAGE TO WOOD AND INTERIOR DRY WALL SURROUNDING WINDOWS AND DOOR UNITS

Finally, Defendant points out that although Bowyer amended his Termite Cost Summary Report to remove the cost of 160 window and door units he originally believed had been surrounded by termite damaged wood, he failed to subtract the cost to replace the wood framing and the interior dry wall surrounding the units. As with Bowyer's failure to subtract carpet ant damage, his failure to subtract the cost to replace non-termite damaged wood surrounding windows and door units does call into question the reliability of his Subtraction Method. Nonetheless, the Court finds that Bowyer's failure to subtract such costs does not render his testimony unreliable. With respect to the interior dry wall surrounding the windows and doors, Bowyer testified that he did not subtract those costs because the damage was caused by the removal of the stucco around the win-

---

**3.** Q: And, on those areas that are coded in green, those actually, in many cases, may have also had wood-destroying fungi as well as termites indicated, right?

A: I think that'd be a mischaracterization of what was intended by those line drawings. If it was wood-decaying fungi, and that was the predominate problem there, wood-decay fungi was delineated. If it's a green line, it was termite damage that caused the problem. If it was some of these other places you were talking about, there is a possibility that wood-decay fungi came in after the termites and started living in those particular areas. But the green lines is termite damage.
(Tr. at 252–253.)

dows and doors, even if it was subsequently determined that there was no termite damage beneath the stucco. As with the Clubhouse, the Court recognizes the issue and will ultimately make a determination as to what costs, if any, for which Defendant is liable. However, the Court does not find that Bowyer's attribution of such costs to Defendant renders his methodology unreliable.

■ The judge's role as gatekeeper is not intended to take the place of the adversary system. *Allison,* 184 F.3d at 1311. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. "The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one best left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir.2000) citing *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 590 (7th Cir.2000).

The Court finds that Bowyer's testimony as to the amount of termite related damage is sufficiently reliable to be admissible. The Court as the trier of fact will determine what weight to give to Bowyer's testimony. As Plaintiff points out, weaknesses in testimony brought out by cross-examination go to the weight rather than to the admissibility of such evidence.

### CONCLUSION

The Court finds that Bowyer's testimony as to the amount of termite related damage is sufficiently reliable to be admissible and that weaknesses therein go to its weight rather than its admissibility. Accordingly, the Court will deny Defendant's Motion to Exclude Bowyer's testimony as to the amount of termite related damage.